RUDOLPH ET AL., D. B. A. JOS. D. ENGELBERT & CO., APPELLEES, *v.* CONRAD SEYFERTH CONSTRUCTION CO., APPELLANT.

(No. 9228—Decided July 8, 1963.)

*Mr. Morton I. Rosenbaum* and *Mr. J. Louis Warm*, for appellees.

*Messrs. Gorman, Davis & Hengelbrok*, for appellant.

HOVER, P. J.   This matter is before the court as an appeal on questions of law.  Two specific questions are presented for determination by the court.   One, was the verdict of the jury and the resultant judgment contrary to the weight of the evidence; and two, did the court err in admitting into evidence certain business records, particularly exhibit 25 (payroll book) and exhibit 27 (book—withdrawals from stockroom), under authority of Section 2317.40 of the Revised Code?

The record shows that on June 24, 1958, plaintiffs, appellees herein, who will be subsequently referred to as "Contractor," submitted a written proposal (exhibit 2) to do the painting work at the Del-Fair Shopping Center for the fixed price of $17,250.   While there were no complete painting specifications available, the plans were sufficiently detailed to permit the Contractor to draw off abundant data to support the proposal (exhibit 7).   The Contractor had solicited the Owner for the privilege of bidding on the Del-Fair Shopping Center construction.   The Owner used this bid and others to obtain financing for the work.

Shortly after the above date, the Owner directed the Contractor to go to work on the painting.   This the Contractor proceeded to do, working on the job off and on as the construction work progressed until about April 1960.   As the work progressed, the Owner was periodically billed by the Contractor.  The owner paid this billing up to July 1959, by which time he had paid the Contractor $17,000, which was the approximate total of the proposal of June 24, 1958.   The Contractor thereafter proceeded to finish the work for the Owner and, from time

to time, for the Owner's tenants as they were procured, and continued to bill the owner for an additional amount of $8,499.42, which was not paid and which is the principal subject matter of this litigation.

The Contractor subsequently sued the Owner for this amount, claiming an express, unwritten contract on a "time and material basis" rather than a fixed contract on the basis of the June 24, 1958, proposal. The Owner denied the time and material contract and cross-petitioned for certain amounts which are not now pertinent.

There can be no doubt that the written proposal of June 24, 1958 (exhibit 2), constituted a bid, that is, an offer to do the job for the fixed price stated. There is also no doubt that this bid was accepted by the Owner's directing the Contractor to commence work. Any indication that the transaction was changed from a fixed price basis to a time and material basis *prior* to the Owner's acceptance, is exceedingly tenuous. If any such change was in fact made, it was made *after* the original contract was formulated on the basis of exhibit 2.

Under the circumstances, it became necessary for the Contractor to assume the burden of proof, not only as to the existence of a time and material contract, but also the burden of establishing that there had been an abandonment of the original contract—an abandonment of which the Owner was aware and which he had accepted to at least the same degree of certainty as he had accepted the original proposal. The evidence submitted in proof of the resulting alleged novation appears from the record to be totally inadequate in at least the following respects.

The only witness offered by the Contractor was Wilson. His testimony is conflicting, but at no time did he testify that the Owner or any representative of his gave specific assent to a time and material contract. At one point when the subject was broached, the Owner's comment was to the effect that the job should be finished for the price quoted. The Owner's associate, Kratz, at no time went any further than to urge the fastest possible completion of the work. Kratz was not authorized to speak for the Owner in this respect, but had other duties in regard to the project. All of Wilson's dealings in regard to the bid were with Mrs. Seyferth. There is no indication that other

than receiving invoices she had any hint at all of a novation. Actually, the fact that the Owner paid estimates promptly and without question up to the contract price and refused to pay further, is substantial evidence of the Owner's understanding of the matter. The fact that the original invoices were promptly paid and, thereafter, no payments whatsoever were made on the excess, can be construed in no other fashion than that the additional invoices were not deemed owing by the Owner. While the witness Wilson undoubtedly had authority to act in the premises for the Contractor, the Contractor-plaintiffs themselves had no negotiations with the Owner until the entire work was almost finished.

The Contractor suggests that the fixed amount proposal was made solely for the purpose of conveniencing the Owner in effecting his financing and was not intended to be the bid it appeared to be, but was merely intended to assist in getting mortgage money. If this be so, and the weight of the evidence is to the contrary, he, the Contractor, is hoist on his own petard.

It was necessary for the Contractor to prove a meeting of the minds on an express contract for time and material by a preponderance of the evidence. The decided weight of the evidence in the record is to the contrary.

Accordingly, and for the reasons derived from the facts set out above, it is the opinion of this court that the verdict and the resulting judgment for the Contractor is against the manifest weight of the evidence.

A further assignment of error which arose from the trial proceedings is the admission of exhibits Nos. 25 and 27 as office records tending to prove the amount due the Contractor on a time and material basis. This evidence, if admissible at all, is acceptable under the terms of Section 2317.40, Revised Code, relative to business records. Business records generally, even though partaking of hearsay evidence, are acceptable as proof provided they fit the conditions of the above statute. These records were identified by the person under whose supervision the actual exhibits were made. She testified as to the method of preparation and as to the source of material from which the entries were made. The material from which these exhibits were compiled was not offered in evidence, although, if these exhibits are truly business records, such source material would

not be necessary. The records were obviously made in the ordinary course of business at or near the time of the event. The records are admissible if the above circumstances are sufficient to establish their probable validity and accuracy.

As the court sees it, on the basis of these particular records and in the light of the circumstances developed during this trial, there is a fatal gap in the authentication of these records. The time records were made on the job by the individual workmen and countersigned by the foreman. They were not exhibited to, authenticated or otherwise approved by, any representative of the Owner, nor is there any evidence to indicate that the Owner even knew of their existence. The evidence establishes also that various individual painting contracts were being executed simultaneously at the Del-Fair Shopping Center. Some, probably most, of the painting was on the account of the Owner. Other painting performed at Del-Fair was obviously and admittedly for the account of actual or prospective tenants. The evidence indicates that the foreman had no way himself of knowing for whose account individual painting time or material was being expended and, consequently, a person or persons making out either the time slips in exhibit 25, or the items of material charged in exhibit 27, as the record stands, had no way of knowing whether the time and material were to be charged to Del-Fair, the Owner, or whether the work had been merely done at the Del-Fair Shopping Center. The exhibits merely contain the notation, "Del-Fair," without further identification, and it is apparent from the record that the painting work was done, except in a few instances toward the chronological end of the entire operation in the spring of 1960, interchangeably with individuals at the Del-Fair Shopping Center and upon their order, and not upon the account of the Owner. There is no established or reliable evidence whether all the time and material charged to Del-Fair was chargeable to the account of the Owner or was merely a term used to designate the place where the work was done.

It is possible that upon a further trial of this cause these exhibits can be sufficiently authenticated to show a reliable time and material charge against the Owner of Del-Fair. However, on the basis of these records, that was not done and, accordingly, the exhibits were inadmissible in this trial as being without sufficient foundation and authentication.

The verdict and judgment below is accordingly reversed, both as being against the manifest weight of the evidence as to the judgment against the Owner and as being founded upon the erroneous admission of the above exhibits to the prejudice of the appellant. Accordingly, the cause is hereby remanded for further proceedings not inconsistent with the findings here.

*Judgment reversed.*

HILDEBRANT and LONG, JJ., concur.